UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOEL ERIC JACOB,

    Plaintiff,

vs.

COLLEEN V. RONAYNE,

    Defendant.

_____/

## COMPLAINT

Now comes Plaintiff, JOEL ERIC JACOB, through counsel, and for his complaint against the above named Defendant states as follows:

1. That Plaintiff JOEL ERIC JACOB is a resident of Michigan, residing in Charlevoix County, Michigan.

2. That Defendant COLLEEN V. RONAYNE is a resident of this judicial district, residing in Oakland County, Michigan.

3. That the occurrences giving rise to the claims set forth in this matter occurred within this judicial district, specifically the County of Oakland, State of Michigan. Thus, venue is proper in this Court pursuant to 28 USC § 1391, et. seq.

4. That jurisdiction in this Court is proper pursuant to 28 USC § 1331(federal question) because one or more of the claims set forth in this action arise under federal law, specifically 42 USC § 1985 and 1988.

5. That as to the state law claims set forth in this case, they arise out of the same body of operative facts that exist for the federal claims, and, as such, the Plaintiff requests that this Honorable Court accept jurisdiction over those claims pursuant to the doctrine of supplemental jurisdiction, as codified in 28 USC § 1367.

## BACKGROUND FACTS

6. That the Plaintiff is a business owner who is also active in several charitable endeavors relating to eradicating world hunger, in addition to being active in his synagogue.

7. That as a result of the Plaintiff's business and charitable endeavors, he often travels internationally.

8. That the Plaintiff has 5 children.

9. That the Plaintiff and his former wife, Lauren Beth Jacob, were involved in a divorce proceeding (Oakland County Circuit Court Case No. 2012-793255-DM), which resulted in a Judgment of Divorce being entered on May 22, 2013.

10. That Defendant Ronayne initially became involved in the Plaintiff's divorce proceedings when she was appointed as a Legal Guardian ad Litem (L-GAL) for the Plaintiff's minor children by way of order dated October 3, 2012. Subsequently, she was appointed as a parenting time facilitator by way of the Judgment of Divorce on May 22, 2013.

11. That in 2015, the circuit court in the divorce proceeding entered a further order indicating that Defendant Ronayne as parenting time facilitator shall "continue to hold the passports for 2 of the minor children", but that she shall return the passports to the Plaintiff "upon request for a maximum of 7 days prior to travel and [plaintiff] shall return [each] passport within 5 days after return."

12. That in December of 2017, Plaintiff proposed a trip to Italy with his 5 children, including his minor daughter whose initials are MAJ, who was then 13 years old.

13. That Plaintiff provided Ronayne with flight information and the planned itinerary and requested that she provide him with MAJ's passport.

14. That Ronayne did not provide the passport, but rather raised various conditions relating to release of the passport for MAJ, which required Plaintiff to file an emergency motion in the circuit court to compel Ronayne to release MAJ's passport.

15. That the Italy trip was supposed to start early on December 24, 2017 with a flight to New York and a connecting flight to Rome. However, the night before the scheduled departure, Plaintiff developed symptoms of food poisoning during the wee hours of December 24, and decided to create a back-up vacation plan in case he did not feel capable of making an international flight. As such, Plaintiff purchased tickets for himself and his children to Fort Lauderdale, Florida, where his mother resided.

16. That after consulting with his physician via telephone on December 24, 2017, Plaintiff decided to follow his doctor's advice and avoid the international trip, instead opting to use the alternate plan of the Florida trip.

17. The court order from the circuit court requiring Defendant to release MAJ's passport provided that the "itinerary reflected on said ticket [to Italy] shall be adhered to unless otherwise agreed by Plaintiff/father and Defendant/mother."

18. That at the airport on December 24, 2017, Plaintiff contacted his ex-wife to obtain her consent to travel to Florida as an alternate trip with the children. The mother then contacted Defendant Ronayne.

19. That while MAJ was at the airport with her father, Defendant Ronayne contacted her and instructed her to leave her father's presence, without telling him, and hide in a bathroom to continue their conversation.

20. That after MAJ left the family group, Plaintiff could not find her and he and his other children became alarmed, looking for her throughout the airport. Eventually, airport police were contacted, and MAJ was eventually located hiding in a bathroom speaking to Defendant via phone. This all resulted in the cancellation of the Florida trip.

21. Based on events at the airport, Defendant Ronayne filed an emergency motion seeking to completely suspend Plaintiff's parenting time with his minor children.

22. Based on Ronayne's motion filed with the circuit court, Plaintiff's parenting time was suspended.

23. That at all pertinent times, Plaintiff had a constitutional right to raise his children and actively participate in their upbringing. See, e.g. Santosky v Kramer, 455 US 745 (1982)(parent has fundamental liberty interest in care, custody, and management of his or her child that is protected by the V and XIV Amendments to the United States Constitution).

24. That the motion filed by Defendant Ronayne, which resulted in state action suspending Plaintiff's parenting time, contained numerous false

and scandalous allegations. At the time Ronayne made these allegations, she knew they were false or unfounded.

25. That ultimately, Ronayne's action, which was undertaken jointly with the circuit court, was reversed by the Michigan Court of Appeals, which also reversed the circuit court's order denying Plaintiff's motion to remove Defendant Ronayne as L-GAL.

26. The Michigan Court of Appeals, in its opinion issued March 3, 2020, noted that Ronayne's motion was "riddled with hearsay, speculation and accusations that ultimately proved unfounded" and that the circuit court granted her motion suspending Plaintiff's parenting time without so much as conducting a hearing as required by statute and due process.

27. After the initial motion filed by Ronayne containing unfounded accusations that she used to obtain a suspension of Plaintiff's constitutional right to participate in raising his child, Ronayne became even more involved with her quest to interfere with Plaintiff's parental rights.

28. In June, 2018, Defendant Ronayne made a request that the circuit court enter an order preventing Plaintiff from attending MAJ's middle school graduation.

29. As noted by the Court of Appeals in its March 3, 2020 opinion, the circuit court, again acting in conjunction with Ronayne, refused

Plaintiff's "request that it take testimony" and instead relied on Ronayne's allegations regarding what Ronayne characterized as "father's 'pretty alarmist craziness . . . the only purpose of which is to make everyone nervous.'"

30. That following the hearing during which the circuit court refused to take testimony, Plaintiff's request to remove Ronayne was denied and, moreover, the circuit court, based on Ronayne's request, "prohibited father from attending [MAJ's] graduation." Ultimately, in large part due to the dishonest actions of Ronayne, working in tandem with the circuit court judge, on July 19, 2019, the circuit court issued a written opinion awarding Plaintiff's ex-wife sole legal and physical custody of Plaintiff's daughter, MAJ.

31. That the circuit court's order awarding sole physical custody was unanimously reversed by the Michigan Court of Appeals by way of its Opinion on March 3, 2020.

32. That, among other things, the Court of Appeals was highly critical of Ronayne's conduct, noting that "no evidence supports that [Plaintiff's] behavior at the airport or the emails (all of which were sent to people other than MAJ) 'significantly' impacted MAJ or her well-being" and that while MAJ may have been distressed at the airport due to the last

minute change in travel plans, the "evidence does not demonstrate that the airport event had *any* effect on MAJ's emotional well-being after that day, let alone a *significant* effect." (emphasis in original).

33. That as noted by the Michigan Court of Appeals, Ronayne became involved in the case to act "as parenting time *facilitator* or *coordinator*." (emphasis in original). The Court noted that the appointment "obligated Ronayne to work *with* mother and father to achieve a meeting of the minds. Id. (emphasis in original).

34. The Court of Appeals noted that "Ronayne's involvement has far exceeded those agreed upon boundaries."

35. The Court of Appeals opinion also noted that Ronayne far exceeded the scope of her appointment and engaged in other improper conduct. For example, the Court of Appeals noted as follows:

> "Since then, Ronayne's involvement has far exceeded those agreed upon boundaries. For example, Ronayne withheld MAJ's passport despite a timely request from father to produce it. Ronayne's conduct was inconsistent with the order then in effect. More globally, Ronayne has firmly and repeatedly asserted that MAJ is opposed to any parenting time with [plaintiff]. An L-GAL is expected to advocate as an attorney for a child's best interests. Those interests include parenting time with both parents."

Slip Op., p. 20.

36. The Court of Appeals also noted that Ronayne became personally bent on destroying Plaintiff's relationship with his daughter MAJ.

37. That the Court of Appeals also made the following finding:

> "Furthermore, the evidence establishes that Ronayne became *personally* enmeshed in MAJ's relationship with [her father], has encouraged MAJ to discontinue that relationship, and has actively advocated in favor of maintaining MAJ's complete separation from her father. Ronayne also played a personal role in the airport events when she advised MAJ to hide in a bathroom, necessitating police involvement. The parties engaged Ronayne to *assist in resolving* parenting-time disputes, not to inflame them."

Slip Op., p. 20 (emphasis in original).

38. The Court of Appeals ordered that Ronayne be removed as the L-GAL in the case. Slip Op., p. 20.

39. That in addition to removing Ronayne from her role in the case, the Court of Appeals also removed the trial judge for appearance of bias. See Slip Op. 21.

## COUNT I – VIOLATION OF 42 USC § 1983

40. Plaintiff incorporates by reference as though fully set forth herein each and every allegation contained in the foregoing paragraphs of Plaintiff's Complaint.

41. That 42 USC § 1983 provides for a private cause of action against "state actors" who deprive persons of their constitutionally protected or other federal rights.

42. That while Defendant is not a traditional "state actor", Defendant can be considered a state actor for purposes of § 1983 if her activities in depriving Plaintiff of constitutional rights were undertaken pursuant to conspiracy or collusion with a state actor.

43. Section 1983 establishes liability for every person who "under color of" state law subjects another person "to deprivation of any rights, privileges, or immunities secured by the constitution."

44. That the Plaintiff has suffered a deprivation of constitutional right, namely a violation of his parental rights which are protected by the United States Constitution, Amendments V and XIV (See, e.g. Santosky v Kramer, supra) and his substantive and due process rights under the United States Constitution, Amendment XIV.

45. The deprivation of Plaintiff's rights includes, but is not limited to having his parenting time with MAJ taken away from him without so much as an evidentiary hearing as required by statute and due process.

46. That the deprivation of Plaintiff's rights was caused, at least in part, by the actions of the Defendant, who acted "under color of" state law

when she undertook actions to knowingly deprive Plaintiff of such rights (acting in conjunction with state actors, including a circuit court referee and/or judge).

47. That the courts of this circuit have noted that "claims of conspiracies between private and state actors, if adequately alleged, generally suffice to establish state action on the part of the private actors" under § 1983. See, e.g. Revis v Meldrum, 489 F.3d. 273, 292 (6th Cir., 2007).

48. That the record of the proceedings below, as outlined above, shows that the Defendant went beyond the scope of her duties as L-GAL and/or parenting time facilitator and actively took action in an attempt to destroy the relationship between Plaintiff and his daughter, MAJ.

49. That the record further shows that the Defendant was acting in tandem with a state actor (namely a judge who was found by the Court of Appeals to be potentially biased) to effectuate the deprivation of Plaintiff's rights, including his parental rights relating to MAJ and his due process rights to have an evidentiary hearing prior to the deprivation or suspension of any parental rights relating to MAJ.

50. That upon information and belief and subject to discovery, the Defendant was acting pursuant to a conspiracy (i.e. an express or tacit

agreement) with the circuit judge to deprive Plaintiff of his constitutionally protected rights.

51. That upon information and belief and subject to discovery, the Defendant took overt actions in furtherance of the purpose of the conspiracy, including filing baseless and/or unfounded motions that she knew would result in state action depriving Plaintiff of his constitutional rights.

52. That as a direct or proximate result of the Defendant's actions to deprive Plaintiff of his constitutional rights in violation of 42 USC §§1983 and/or 1985, the Plaintiff has suffered and will continue to suffer damages, including injury to the relationship between himself and his daughter MAJ, shock, humiliation, mortification, emotional distress, legal fees and other expenses, in addition to other damages, both economic and non-economic.

53. That in addition to compensatory damages, Plaintiff is entitled to an award of punitive damages against the Defendant because Defendant's actions were undertaken with willful or wanton disregard of Plaintiff's constitutionally protected rights.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter a judgment in his favor against the Defendant awarding him such damages as constitute full, fair and just compensation, together with a

separate award of punitive damages, along with costs and attorney fees pursuant to 42 USC § 1988, together with such further relief as the court deems appropriate under the circumstances.

## COUNT II – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

54. Plaintiff incorporates by reference as though fully set forth herein each and every allegation contained in the foregoing paragraphs of Plaintiff's Complaint.

55. That Michigan law recognizes the tort of intentional infliction of emotional distress.

56. That the Defendant engaged in intentional conduct, vis-à-vis the Plaintiff that was outrageous, corrupt and abhorrent. Defendant's conduct was well beyond what should be tolerated in a civilized society.

57. That in undertaking her course of conduct, the Defendant knew that her conduct would cause Plaintiff to suffer extreme and severe emotional distress.

58. That as a direct and proximate result of Defendant's intentional conduct, Plaintiff has, in fact, suffered severe and extreme emotional distress, which has resulted in physical illness or symptoms.

59. That as a direct and proximate result of Defendant's intentional infliction of emotional distress, the Plaintiff has suffered damages, including

injury to the relationship between himself and his daughter MAJ, shock, humiliation, mortification, emotional distress, legal fees and other expenses, in addition to other damages, both economic and non-economic.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in his favor against the Defendant awarding him such damages as constitute full, fair and just compensation, along with costs and attorney fees and such further relief as the court deems appropriate under the circumstances.

## COUNT III – NEGLIGENCE

60. Plaintiff incorporates by reference as though fully set forth herein each and every allegation contained in the foregoing paragraphs of Plaintiff's Complaint.

61. That in her role as parenting time coordinator/facilitator, Defendant owed a duty to work with both mother and father (Plaintiff) to achieve a meeting of the minds on parenting time disputes.

62. That Defendant owed a duty of care to Plaintiff in Defendant's capacity as parenting time coordinator/facilitator.

63. That Defendant was obligated to fulfill her role as parenting time coordinator/facilitator with reasonable care, caution, and

circumspection for the rights of all to whom she owed a duty, including Plaintiff.

64. That Defendant was negligent and/or reckless in her role as parenting time coordinator/facilitator.

65. that as a direct and proximate cause of Defendant's negligence and/or recklessness in her role as a paid parenting time coordinator/facilitator, Plaintiff has suffered and will continue to suffer damages including shock, humiliation, mortification, emotional distress, legal fees and other expenses, in addition to other damages, both economic and non-economic.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in his favor against the Defendant awarding him such damages as constitute full, fair and just compensation, along with costs and attorney fees and such further relief as the court deems appropriate under the circumstances.

Respectfully submitted,

/s/Michael S. Cafferty
MICHAEL S. CAFFERTY P36613
Attorney for Plaintiff
333 West Fort St Ste 1400
Detroit, MI 48226
313-628-4717
mcaffe@aol.com

DATED: December 23, 2020