UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOEL ERIC JACOB,

              Plaintiff,                                   Case No. 20-13370

v.                                              HON. MARK A. GOLDSMITH

COLLEEN RONAYNE,

              Defendant.
_____/

**OPINION & ORDER**
**GRANTING DEFENDANT'S MOTION TO DISMISS (Dkt. 15)**

This matter is before the Court on Defendant Colleen Ronayne's motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. 15). Plaintiff Joel Jacob filed a response to the motion (Dkt. 16), and Ronayne filed a reply (Dkt. 17). For the reasons stated below, the Court grants the motion as to the federal claim and dismisses without prejudice the state-law claims pursuant to 28 U.S.C. § 1367(c)(3).[1]

## I. BACKGROUND

During Jacob's divorce proceedings in Michigan's Oakland County Circuit Court, Ronayne was appointed as a lawyer-guardian ad litem (LGAL) for Jacob's minor children and then served as a parenting coordinator. Am. Compl. ¶ 11 (Dkt. 13). Jacob maintains that "[t]his case is limited to Defendant's conduct as a parenting time facilitator—not her conduct as LGAL."[2] Id. He brings

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b).

[2] In his amended complaint, Jacob at times uses the term "parenting-time facilitator" to refer to Ronayne. The Court uses the term from the Michigan statute that characterizes an individual who fulfills this role as a "parenting coordinator." Mich. Comp. L. § 722.27c.

a claim under 42 U.S.C. § 1983, alleging that Ronayne deprived him of his fundamental liberty interest in the care, custody, and management of his children and deprived him of substantive due process, including by taking away his parenting time with his minor daughter without an evidentiary hearing. Id. ¶¶ 45–46. He also brings state-law claims of intentional infliction of emotional distress and negligence. Id. ¶¶ 55–66.

## II. ANALYSIS[3]

Ronayne argues that Jacob is not entitled to relief under § 1983 because she is not a state actor and, even if she were a state actor, she is absolutely immune from liability, given that the functions that LGALs and parenting coordinators perform are integral to the judicial process. Mot. at 11–14.

The Court first discusses the issue of state action and then examines the issue of quasi-judicial immunity.

### A. Section § 1983 and Under Color of State Law

To state a claim under § 1983, a plaintiff must set forth facts that, when construed in his or her favor, establish (i) the deprivation of a right secured by the Constitution and (ii) that the deprivation was caused by a person acting under color of state law. Sigley v. City of Parma Heights, 437 F.3d 527, 533 (6th Cir. 2006). For purposes of a § 1983 claim, "[a] private party's actions constitute state action . . . where those actions may be fairly attributable to the state." Chapman v. Higbee, 319 F.3d 825, 833 (6th Cir. 2003) (punctuation modified). Whether a defendant is a state actor is

---

[3] To survive a motion to dismiss, a plaintiff must allege "facts that state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The Court is required to "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007). The defendant has the burden of showing that the plaintiff has failed to state a claim for relief. Id.

a question of law for the Court to decide. Neuens v. City of Columbus, 303 F.3d 667, 670 (6th Cir. 2002).

### 1. Private Party as a State Actor

The United States Court of Appeals for the Sixth Circuit has recognized that, although there are "significant links" between a guardian ad litem (GAL) and the government, where the GAL reports to the court as an independent investigator and acts as an advocate of the child, thereby occupying a role "distinct from the court before which she advocates," the GAL is not a state actor for the purpose of § 1983. Reguli v. Guffee, 371 F. App'x 590, 601 (6th Cir. 2010); see also McClear v. Donaldson, 812 F.2d 1407 (6th Cir. 1987) (Table) (explaining that a GAL's actions in state court proceedings "were done in fulfillment of [the GAL's] . . . responsibilities as a court-appointed guardian ad litem . . . and therefore were not committed under the color of state law").

The rationale for finding that GALs do not act under color of state law when they act in fulfillment of their statutory duties is that, although a GAL is appointed by the court, "[t]he purpose of the appointment requires a guardian ad litem to exercise judgment independently of the judicial officer or any party to the case." Arsan v. Keller, No. 17-121, 2017 WL 6398734, at *4 (S.D. Ohio Dec. 13, 2017). Moreover, a GAL is required to act in the minor's best interests and, therefore, "owes his or her undivided loyalty to the minor, not the state." Meeker v. Kercher, 782 F.2d 153, 155 (10th Cir. 1986) (emphasizing that a GAL "assumes no obligation to the mission of the state") (punctuation modified); see also Clay v. Friedman, 541 F. Supp. 500, 503 (N.D. Ill. 1982) (stating that, much like a public defender who is an employee of the state but owes a duty to his or her client, a GAL is appointed by a state actor but "is a fiduciary who must act in the minor's best interest").

3

The factors that underlie the determination that GALs are not state actors for the purpose of § 1983—that they serve as independent investigators and sources of information, and that they represent the best interests of the child—also apply to LGALs like Ronayne.[4]  As the Michigan Court of Appeals has explained, "although an LGAL functions like an attorney and has duties that go beyond those of a GAL, an LGAL's duties ultimately conform to those of a GAL: investigating and independently determining the child's best interests and then serving those interests."  Farris v. McKaig, 920 N.W.2d 377, 383 (Mich. Ct. App. 2018).

 The statute that defines an LGAL's duties confirms this point.  It states that an LGAL's "duty is to the child, and not the court."  Mich. Comp. L. § 712A.17d(1).  It also states that an individual appointed to this role is to "serve as the independent representative for the child's best interests," to "determine the facts of the case by conducting an independent investigation," and to "make a determination regarding the child's best interests and advocate for those best interests according to the lawyer-guardian ad litem's understanding of those best interests, regardless of whether the lawyer-guardian ad litem's determination reflects the child's wishes."  Id. § 712A.17d(1)(b),(c),(i).

While Jacob alleges that this case is limited to Ronayne's conduct as a parenting coordinator, not as an LGAL, Am. Compl. ¶ 11, there is no functional difference between those roles for the purpose of determining whether an individual acted under color of state law.  In substance, both LGALs and parenting coordinators serve similar functions of helping determine solutions to and making recommendations regarding family and child custody disputes in state court proceedings.

Under Michigan law, a parenting coordinator is "a person appointed by the court for a specified term to help implement the parenting time orders of the court and to help resolve parenting disputes

---

[4] Unlike a GAL, who need not be an attorney, Michigan law defines an LGAL as an attorney appointed to represent a child who has the powers and duties specified by statute.  Mich. Comp. L. § 712A.13a(1)(f),(g).

that fall within the scope of the parenting coordinator's appointment."   Mich. Comp. L. § 722.27c(1).   Like an LGAL, a parenting coordinator must exercise  independent, professional judgment.   Id. § 722.27c(3)(b) (specifying that a parenting coordinator has "authority to make recommendations regarding disputes").

 Further, in carrying out their statutorily defined responsibilities, both LGALs and parenting coordinators consider, promote, and make determinations regarding the best interests of the child. The statute that governs a parenting coordinator's duties makes clear that the best interests of the child is a guiding principle for the resolution of parenting disputes.   Id. § 722.27c(f)(viii) (stating that a parenting coordinator has "[t]he right to interview or communicate with any other person the parenting coordinator considers relevant to resolve an issue or to provide information and counsel to promote the best interests of the child").

Thus, both LGALs and parenting coordinators are appointed to serve the goal of providing as appropriate an environment for the child as possible.   Based on these functional similarities, the Court does not find a basis to distinguish between an LGAL and a parenting coordinator regarding the "under color of state law" inquiry.

Accordingly, Ronayne was not a state actor when she performed her role of LGAL or parenting coordinator.   Therefore, to hold Ronayne liable under § 1983, the only available theory would be that she engaged in a civil conspiracy with other state actors.   See Weser v. Goodson, 965 F.3d 507, 516 (6th  Cir. 2020).   The Court proceeds to examine Jacob's allegations of a § 1983 conspiracy.

## 2.  Private Party Engaged in Conspiracy with State Actors

Although a private party is generally not liable under § 1983, liability may attach where the private party "is a willful participant in joint action with the State or its agents."  Dennis v. Sparks,

5

449 U.S. 24, 27 (1980).  Therefore, "[i]f a private party has conspired with state officials to violate constitutional rights, then that party qualifies as a state actor and may be held liable pursuant to § 1983."  Memphis, Tenn. Area Local, Am. Postal Workers Union, AFL-CIO v. City of Memphis, 361 F.3d 898, 905 (6th Cir. 2004) (punctuation modified).

The complaint, however, must adequately allege a conspiracy claim.  See Revis v. Meldrum, 489 F.3d 273, 292 (6th Cir. 2007) ("[C]laims of conspiracies between private and state actors, if adequately alleged, generally suffice to establish state action on the part of the private actors for the purpose of deciding a motion to dismiss.").[5]  A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action."  Hooks v. Hooks, 771 F.2d 935, 943–944 (6th Cir.1985).   To successfully plead a § 1983 conspiracy, a plaintiff must allege facts sufficient to state a claim that (i) a single plan existed, (ii) the conspirators shared a conspiratorial objective to deprive the plaintiff of his or her constitutional rights, and (iii) an overt act was committed in furtherance of the conspiracy that caused the injury.  Id.  "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983."

---

[5] In his response, Jacob states that he need allege only concerted action between a private and state actor, not a conspiracy.  Resp. at 7.  For this proposition, he relies on Weser, 965 F.3d at 516, in which the court stated that, to establish state action under § 1983, "[a] plaintiff may also allege that a private party has engaged in a conspiracy or concerted action with other state actors," id. (emphasis added).  However, Weser did not hold that alleging that a private party engaged in a "concerted action" obviates the need for the plaintiff to successfully plead a conspiracy.  Weser also did not hold that allegations of conspiracy and allegations of concerted action are distinct concepts subject to different pleading standards.  After making the statement referenced by Jacob, the Weser court immediately proceeded to "set out the standard for proving a civil conspiracy under § 1983," identifying the three elements of a conspiracy claim defined in Hooks (discussed below).  Id.  It also stated that if the plaintiff makes no allegations that a private party satisfies one of the three tests that the Sixth Circuit uses to determine whether a private party is a state actor, the plaintiff "would need to show . . . that [the defendants] were engaged in a civil conspiracy."  Id. Thus, concerted action is not an alternative theory to conspiracy.

Gutierrez v. Lynch, 826 F.2d 1534, 1538 (6th Cir. 1987).  This pleading standard is "relatively strict."  Fieger v. Cox, 524 F.3d 770, 776 (6th Cir. 2008).

Jacob alleges that Ronayne "was acting in a quasi-judicial capacity and/or pursuant to a conspiracy (i.e. an express of tacit agreement) with the circuit judge" to deprive him of his constitutional rights.  Am. Compl. ¶ 51.  He alleges that Ronayne "was acting in tandem with a state actor (namely a judge who was found by the Court of Appeals to be potentially biased) to effectuate the deprivation of [his] rights," including his parental rights relating to his minor daughter and his due process rights to have an evidentiary hearing before the deprivation or suspension of any parental rights.  Am. Compl. ¶ 50.  He states that Ronayne "took overt actions in furtherance of the purpose of the conspiracy," which included the filing of baseless motions that she knew would result in the deprivation of his constitutional rights.  Id. ¶ 52.  And he states that "the circuit court, again acting in conjunction with Ronayne," denied Jacob's request to take testimony related to a custody determination and, instead, relied on Ronayne's allegations.  Id. ¶ 30.

Jacob has presented conclusory allegations of a conspiracy that are not sufficiently supported by references to material facts.  The only facts that he has alleged in support of a § 1983 conspiracy are that (i) the Michigan Court of Appeals concluded that there was a risk of bias by the state-court judge who oversaw Jacob's divorce proceedings, and (ii) the judge ruled against Jacob in custody determinations.  However, neither the risk of bias nor even actual bias establishes that a judge has agreed with another person to deprive an individual of his or her constitutional parental rights.  Further, the fact that the state-court judge ruled against Jacob cannot support a conspiracy claim because ruling on motions is inherent in the judicial function.

Courts have regularly rejected as insufficient a conspiracy claim based on unfavorable judicial rulings.  See, e.g., Jiricko v. Allison, 259 F. App'x 472, 475 (3d Cir. 2007) ("The mere fact that Judge Allison issued orders that were unfavorable to Jiricko is insufficient to give rise to an inference of an agreement between the defendants to deprive Jiricko of his rights."); Deck v. Leftridge, 771 F.2d 1168, 1170 (8th Cir. 1985) (finding that evidence of unfavorable judicial rulings and evidence that a state-court judge failed to act on plaintiff's objections to a private attorney's conduct fell short of suggesting any mutual understanding or "meeting of the minds" in an alleged conspiracy between a state-court judge and the attorney).

If an adverse judicial ruling were sufficient to allege a § 1983 conspiracy, disappointed litigants could bring a conspiracy claim whenever a judge ruled against them.  More particularized pleading is necessary to avoid converting every contested judicial ruling into a separate federal civil rights lawsuit.  See Livingstone v. Haddon Point Manager LLC, Civil No. 19-13412, 2020 WL 7137852, at *11 (D.N.J. Dec. 7, 2020) ("There is nothing talismanic about the word 'conspiracy'; it will not transform an otherwise ordinary but unfavorable court ruling into an unlawful agreement to deprive Plaintiff of his rights."); Kornafel v. Del Chevrolet, NO. 19-CV-2783, 2019 WL 2764396, at *2 (E.D. Pa. June 28, 2019) ("A conspiracy cannot be found from allegations of judicial error . . . or adverse rulings absent specific facts demonstrating an agreement to commit the alleged improper actions.") (punctuation modified).

Without more factual content, the "allegedly conspiratorial actions could equally have been prompted by lawful, independent goals which do not constitute a conspiracy."  Twombly, 550 U.S. at 566–567 (punctuation modified).  Because Jacob has not successfully pled a conspiracy between Ronayne and the state-court judge, his § 1983 claim may be dismissed on that basis alone.

### B. Quasi-Judicial Immunity

Jacob's allegation that Ronayne is a state actor—and particularly his allegation that Ronayne acted in a "quasi-judicial capacity," Am. Compl. ¶¶ 47, 51—necessarily implicates the issue of whether Ronayne is entitled to quasi-judicial immunity. The Court finds that, even if Ronayne were a state actor or sufficient conspiracy allegations had been pled, Ronayne is entitled to immunity for the duties she performed in both her role as LGAL and her role as parenting coordinator.

Absolute judicial immunity has been extended to non-judicial officers who perform "quasi-judicial" duties. Bush v. Rauch, 38 F.3d 842, 847 (6th Cir. 1994). "Quasi-judicial immunity" extends to those "who perform functions closely associated with the judicial process." Cleavinger v. Saxner, 474 U.S. 193, 200 (1985). The Supreme Court has endorsed a "functional" approach for determining whether a public official is entitled to quasi-judicial immunity. Forrester v. White, 484 U.S. 219, 224 (1988). In Cleavinger, 474 U.S. at 202, the Court described a non-exhaustive list of factors "characteristic of the judicial process" to consider in determining whether a public official should be afforded quasi-judicial immunity, including: (i) the need to assure that the official can perform his or her functions without harassment or intimidation; (ii) the presence of safeguards that reduce the need for private actions as a means of controlling unconstitutional conduct; (iii) insulation from political influence; (iv) the importance of precedent; (v) the adversary nature of the process; and (vi) the correctability of error on appeal. An official seeking absolute immunity bears the burden of showing that such immunity is justified. Burns v. Reed, 500 U.S. 478, 486 (1991).

The Sixth Circuit has held that GALs are entitled to immunity from federal constitutional claims when they act within the scope of their roles as "advocate[s] for the child in judicial

proceedings." Kurzawa v. Mueller, 732 F.2d 1456, 1458 (6th Cir. 1984).  Immunity also extends to "the actions they take while investigating, gathering information about the parents and children, and reporting to the court their custody recommendations."  Arsan v. Keller, 784 F. App'x 900, 908 (6th Cir. 2019).  The Sixth Circuit has explained that GALs "must act in the best interests of the child [they] represent" and that "[s]uch a position clearly places [them] squarely within the judicial process to accomplish that goal."  Kurzawa, 732 F.2d at 1458.  GALs "must also be able to function without the worry of possible later harassment and intimidation from dissatisfied parents."  Id.  Therefore, "failure to grant immunity would hamper the duties of a guardian ad litem in [his or her] role as advocate for the child in judicial proceedings."  Id.  Numerous courts have reached the same conclusion.  See, e.g., Gambrel v. Croushore as Next Friend of Villarreal, NO. 2020-CA-0881-MR, 2021 WL 2614496, at *5, *6 (Ky. Ct. App. June 25, 2021) (noting that circuit courts with published opinions "have unanimously held that GALs are entitled to absolute judicial immunity for activities within the scope of their appointment" based on the fact that "[i]f GALs are harassed by a disgruntled parent . . . or if they even fear the potential of such litigation, their efforts to advance the children's best interests would always be suspect").

Because courts take a functional approach to determining whether a public official is entitled to quasi-judicial immunity, see Forrester, 484 U.S. at 224, and because LGALs and GALs perform the same function of independently determining and pursuing the child's best interests, see Farris, 920 N.W.2d at 361, the rationale for affording immunity to GALs applies equally to LGALs, see Cannistra v. Rodriguez, No. 1:18-cv-00078, 2018 WL 5777356, at *3 (M.D. Tenn. Nov. 2, 2018) (finding that attorneys ad litem are immune from § 1983 liability).  Accordingly, Ronayne is immune from § 1983 liability for actions she performed as an LGAL.

In addition, district courts in other circuits have found that when parenting coordinators act within the scope of their statutory duties, they are likewise entitled to quasi-judicial immunity. See, e.g., Jallad v. Beach, No. 16-2843, 2017 WL 3053992, at *4 (D. Kan. July 19, 2017) (finding on a motion to dismiss that, because the plaintiff's complaints about the defendant "are all related to his actions and decisions [the defendant] made as the parenting coordinator," the defendant was entitled to quasi-judicial immunity); Bechdoldt v. Loveland, No. 10-1041, 2011WL 6020666, at *4 (D. Or. Nov. 30, 2011) (finding that, because the parenting coordinator's determination that the plaintiff should not be the custodial parent and his decision to impose limited parenting time were within the scope of his statutory authority, he had absolute immunity from the plaintiff's § 1983 claim).

For example, in Babb v. Eagleton, 614 F. Supp. 2d 1232, 1240 (N.D. Okla. 2008), the court found that the state statutes creating the position of parenting coordinator, the appointment order at issue in the case, and the Cleavinger factors all indicated that the role of parenting coordinator was functionally comparable to a judicial officer and that, therefore, parenting coordinators were entitled to quasi-judicial immunity.  Much like the Michigan statute governing the role and duties of parenting coordinators, the state statute at issue in Babb defined a parenting coordinator's role as "resolving issues and deciding disputes."  Id. at 1239; Mich. Comp. L. § 722.27c.  And, assessing the factors set forth in Cleavinger, the court determined that parenting coordinators:

> (1) must be able to perform [their] function[s] without harassment or intimidation; (2) [are] subject to safeguards—e.g., court supervision and review—that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (3) must be insulated from political influence in order to impartially complete [their] duties of mediating between custodial parents; (4) must attempt to abide by precedent and follow the domestic law of Oklahoma; and (5) [are] involved in a highly adversarial process—resolving disputes between divorced parents regarding their children.

Id. at 1240.

This Court joins in the views expressed by the authorities cited above that a parenting coordinator is absolutely immune from liability.  Jacob's claims against Ronayne are based on actions that she took within her role as parenting coordinator, including filing motions regarding parenting time and speaking to Jacob's minor daughter regarding parenting time. Therefore, Ronayne is immune from § 1983 liability in her role as parenting coordinator.

### C.  State-Law Claims

Because the Court grants Ronayne's motion to dismiss as to the federal claim, the Court will exercise its discretion to decline to exercise supplemental jurisdiction over the remaining state-law claims by dismissing these claims without prejudice.  28 U.S.C. § 1367(c)(3); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726–727  (1966) ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

### III. CONCLUSION

For the foregoing reasons, the Court grants Ronayne's motion to dismiss as to the federal claim and dismisses without prejudice Jacob's state-law claims pursuant to 28 U.S.C. § 1367(c)(3).


        SO ORDERED.

Dated:  January 7, 2022                    s/Mark A. Goldsmith
         Detroit, Michigan                 MARK A. GOLDSMITH
                                           United States District Judge